1

2

3

4                      UNITED STATES DISTRICT COURT

5                      NORTHERN DISTRICT OF CALIFORNIA

6

7    MARIO ANTHONY SABALLOS,                    Case No.  13-cv-05943-KAW

           Plaintiff,                           **ORDER DENYING PLAINTIFF'S**
8                                               **MOTION FOR SUMMARY JUDGMENT**
           v.                                   **AND GRANTING DEFENDANT'S**
9                                               **CROSS-MOTION FOR SUMMARY**
                                                **JUDGMENT**
10   CAROLYN W. COLVIN,
                                                Re: Dkt. Nos. 22 & 25
           Defendant.
11

12

13       Plaintiff Mario Anthony Saballos seeks judicial review, pursuant to 42 U.S.C. § 405(g), of

14   the Commissioner's final decision, and the remand of this case for further proceedings.  Pending

15   before the Court is Plaintiff's motion for summary judgment and Defendant's cross-motion for

16   summary judgment.  Having considered the papers filed by the parties, and for the reasons set

17   forth below, the Court DENIES Plaintiff's motion for summary judgment, and GRANTS

18   Defendant's cross-motion for summary judgment.

19                              **I.    BACKGROUND**

20       On January 14, 2010, Plaintiff Mario Anthony Saballos filed a Title II application for

21   disability insurance benefits. Administrative Record ("AR") 140-41.  Plaintiff's application

22   alleges a disability onset date of approximately July 22, 2009. AR 160.  Plaintiff's claim was

23   denied on July 16, 2010. AR 69-72.  Plaintiff's Request for Reconsideration was denied on

24   December 20, 2010. AR 75-79.  A hearing was held before Administrative Law Judge Richard P.

25   Laverdure on January 25, 2012. AR 23-32.

26       Plaintiff is fifty-four years old, is married, and lives with his wife and adult daughter. AR

27   141, 498.  Plaintiff has not been engaged in substantial gainful activity since July 22, 2009. AR

28   25.  At the hearing, Plaintiff testified that he had worked on the automobile assembly line at

*United States District Court*
*Northern District of California*

1    NUMMI for 22 years. AR 43. Plaintiff testified that he underwent heart surgery in March 2007,

2    and returned to work on "light duty" two months later, and continued on light duty for two years

3    before he went on permanent disability in July 2009, because he "couldn't keep up with the [pace

4    of the] work no more" due to his heart infection and shortness of breath. AR 43, 52-53.

5        On April 19, 2010, Frank Chen, M.D., performed a consultative internal medicine

6    evaluation. AR 479-86. Plaintiff reported shortness of breath in February 2007 and was diagnosed

7    with pericardial effusion caused by pericarditis in March 2007. AR 479. Plaintiff had aspiration

8    done to remove the fluid, and his last echocardiogram in February 2008 showed normal findings.

9    *Id.* Plaintiff reported asthma symptoms, including wheezing, but had not experienced symptoms

10   for two months. *Id.* Plaintiff reported that he had hypertension, but his blood pressure was not

11   under control. *Id.* Dr. Chen's examination revealed that Plaintiff's heart sounds were clear and

12   without murmur and that his heart rhythm was regular, and he had no recurrence of pericardial

13   effusion. AR 480-81. Additionally, Plaintiff's asthma was presently asymptomatic, but he was

14   advised to seek medical attention regarding his blood pressure. AR 481. Dr. Chen opined that

15   Plaintiff can stand for six hours of an eight-hour workday, can sit in an eight-hour workday

16   without limitation, and could lift and carry 10 pounds frequently and 20 pounds occasionally. *Id.*

17   Dr. Chen also opined that Plaintiff needed to avoid exposure to chemicals, fumes, dust, and smoke

18   due to his history of asthma. *Id.*

19       On May 6, 2010, State agency medical consultant J. Bradus, M.D., reviewed Plaintiff's

20   medical records and assessed his functional capacity. AR 487-91. Dr. Bradus opined that Plaintiff

21   can lift and/or carry 25 pounds frequently and 50 pounds occasionally; stand and/or walk for about

22   six hours in an eight-hour workday; and sit for six hours in an eight-hour workday. AR 488. Dr.

23   Bradus also opined that Plaintiff should avoid concentrated exposures to fumes, odors, dusts,

24   gases, and poor ventilation. AR 490.

25       On May 27, 2010, Cheryl Arpaci, Psy.D, performed a consultative psychological

26   assessment. AR 496-500. Dr. Arpaci noted that Plaintiff's chief complaints were that he had an

27   enlarged heart with history of infection, high blood pressure, high cholesterol, asthma, depression,

28   and anxiety. AR 496. She also noted that Plaintiff was "significantly sad and anxious related to

life changes" resulting from his heart problems in March 2007. *Id.* Dr. Arpaci opined that Plaintiff "was tearful describing life changes and endorsed period of sadness, as well as passive suicidal ideation about 1x a month." AR 497. Dr. Arpaci found that Plaintiff's intelligence, attention, and thought process were intact, but his mood was depressed and his affect showed some constriction. AR 498-99. His cognition was unimpaired, had moderate emotional impairment, and his prognosis was "fair to guarded." Dr. Arpaci diagnosed Plaintiff with panic disorder without agoraphobia, and depression NOS. AR 499. On Axis IV, Dr. Arpaci provided that his problems were related to his "occupation," and assigned him a Global Assessment of Functioning ("GAF") score of 60. *Id.* Dr. Arpaci opined that Plaintiff's ability to follow simple instructions, ability to maintain adequate pace or persistence to perform one or two step simple, repetitive tasks, and his ability to interact appropriately with coworkers, supervisors and the public on a regular basis were unimpaired. AR 500. Plaintiff was only mildly impaired in his ability to adapt to changes, hazards, or stressors in a workplace setting. *Id.* But Plaintiff was moderately impaired in his ability to follow complex/detailed instructions, maintain pace to perform complex tasks, and maintain adequate attention/concentration. *Id.* Lastly, Plaintiff was moderately-to-severely impaired in his ability to withstand the stress of a routine workday due to "panic attacks related to [his] heart condition." *Id.*

On June 29, 2010, State agency medical consultant T. Brady, M.D., performed a psychiatric review of Plaintiff's medical records and assessed his mental functional capacity. AR 502-15. Dr. Brady opined that Plaintiff was only moderately limited in his ability to understand and remember detailed instructions, carry out detailed instructions, maintain his attention and concentration for extended periods, and his ability to complete a normal workweek without interruptions. AR 502-03. Dr. Brady also opined that Plaintiff experienced moderate limitation in his ability to respond appropriately to changes in the work setting. AR 503. Dr. Brady did not diagnose Plaintiff with depression, but rather anxiety disorder that resulted in mild limitation in daily living and social functioning, and moderate limitation in maintaining concentration, persistence, or pace. AR 509, 513.

On September 23, 2010, Joan Ruderman, MFT, opined that Plaintiff was unable to work

and would likely remain permanently disabled due to depression. AR 561.  Dr. Ruderman elaborated that Plaintiff's "depression is based on his medical condition, which is not likely to improve significantly, [so] his depression may be especially difficult to treat." *Id.*  Dr. Ruderman only treated Plaintiff for two months, and saw him "a few times," which she admits makes it "difficult to give an accurate prognosis." *Id.*

On November 1, 2010, State agency medical consultation Heather Barrons, Psy.D, performed a psychiatric review of Plaintiff's medical records and assessed his mental residual functional capacity. AR 568-85.  Dr. Barrons diagnosed Plaintiff with a mood disorder due to general medical condition, and panic disorder without agoraphobia. AR 571, 573.  Dr. Barrons opined that Plaintiff experienced moderate limitations in daily living, social functioning, and in maintaining concentration, persistence, or pace. AR 578. Dr. Barron's concluded that "[t]he available data suggests that [Plaintiff] has had some worsening in functioning but not to the level that would preclude him from carrying out a simple task on a sustained basis," and that he should be "able to sustain a simple routine over a 40 hour workweek." AR 580, 584.

On December 8, 2010, Rollington Ferguson, M.D., performed a consultative cardiology evaluation. AR 588-92.  Dr. Ferguson reported that Plaintiff had no clinical findings of congestive heart failure and appeared clinically compensated, such that his symptoms of ongoing fatigue and dyspnea on exertion were not explained by his current cardiovascular status. AR 589-90.  Dr. Ferguson classified Plaintiff as New York Heart Association Class II with the caveat that Plaintiff appears adequately compensated. AR 590.

Plaintiff was treated at Pathways to Wellness between February 22, 2011 and June 16, 2011. AR 616-27.  On February 22, 2011, Plaintiff was diagnosed with major depression, and assigned a GAF score of 55-60. AR 628.  Despite the low GAF score, the clinician opined that Plaintiff only experienced mild limitations. *Id.*  On both April 19 and June 16, 2011, Plaintiff was assigned a GAF score of 60. AR 618, 622.

Zulfiqar Ali, M.D., sent a letter, dated January 26, 2012, in which he reported that Plaintiff had been diagnosed with pericardial effusion with shortness of breath since July 2009, which is when Plaintiff's disability began. AR 642.

1    On March 8, 2012, Dr. Ferguson re-evaluated Plaintiff. AR 643-51.  The results were

2    unremarkable, and Dr. Ferguson concluded that there was no evidence of heart failure or

3    dysrhythmia and suspected that Plaintiff was malingering. AR 645.  Dr. Ferguson downgraded

4    Plaintiff to New York Heart Association Class I. *Id.*  Regarding residual functional capacity, Dr.

5    Ferguson opined that Plaintiff had no significant limitations or disability. *Id.*

6    On April 21, 2012, medical expert Samuel Landau, M.D., responded to medical

7    interrogatories sent to him by the ALJ after the hearing in order to better assess Plaintiff's

8    functional capacity. AR 30, 664-72.  Dr. Landau opined that Plaintiff has not required frequent,

9    acute asthma treatment and has had normal echocardiograms since his single episode of

10   pericarditis. AR 665.  Dr. Landau noted that New York Heart Association Class I indicates no

11   cardiac symptoms. *Id.*  Dr. Landau opined that Plaintiff's physical limitations included that he

12   can lift and/or carry 21 to 50 pounds occasionally and 20 pounds frequently; stand and/or walk

13   for six hours in an eight-hour workday; sit for six hours in an eight hour workday; frequently

14   climb stairs/ramps, stop, kneel, crouch and crawl; never climb ladders/scaffolds; never balance;

15   and avoid exposure to environmental hazards. *See* AR 667-71.

16   In a June 11, 2012 decision, the ALJ found that Plaintiff was not disabled.  AR 23-32.

17   On July 24, 2012, Plaintiff requested that the Appeals Council review the ALJ's decision. AR

18   15-17.  The ALJ's decision became the final decision of the Commissioner when the Appeals

19   Council denied review on July 8, 2013.  AR 1-7.  Plaintiff now seeks judicial review of the

20   Commissioner's decision pursuant to 42 U.S.C. § 405(g).

21   On May 16, 2014, Plaintiff filed a motion to augment the administrative record to include a

22   residual functional capacity ("RFC") work restriction questionnaire filled out by Dr. Zulfiqar Ali,

23   M.D., F.A.C.C., dated August 8, 2012. (Dkt. Nos. 14 & 16.)  On July 18, 2014, Plaintiff's motion

24   was denied. (Dkt. No. 17.)

25   On November 30, 2014, Plaintiff filed his motion for summary judgment. (Pl.'s Mot.,

26   Dkt. No. 22.).  On December 19, 2014, Defendant filed its opposition and cross-motion for

27   summary judgment. (Def.'s Opp'n, Dkt. No. 27.)  Plaintiff did not file a reply, so the motions

28   are fully briefed.

United States District Court
Northern District of California

## II.   LEGAL STANDARD

A court may reverse the Commissioner's denial of disability benefits only when the Commissioner's findings are 1) based on legal error or 2) are not supported by substantial evidence in the record as a whole.  42 U.S.C. § 405(g); *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999).  Substantial evidence is "more than a mere scintilla but less than a preponderance"; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* at 1098; *Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996).  In determining whether the Commissioner's findings are supported by substantial evidence, the Court must consider the evidence as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion.  *Id.* "Where evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008).

Under Social Security Administration ("SSA") regulations, disability claims are evaluated according to a five-step sequential evaluation. *Reddick v. Chater*, 157 F.3d 715, 721 (9th Cir. 1998). At step one, the Commissioner determines whether a claimant is currently engaged in substantial gainful activity. *Id.*  If so, the claimant is not disabled. 20 C.F.R. § 404.1520(b).  At step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments," as defined in 20 C.F.R. § 404.1520(c). *Reddick*, 157 F.3d 715 at 721.  If the answer is no, the claimant is not disabled. *Id.*  If the answer is yes, the Commissioner proceeds to step three, and determines whether the impairment meets or equals a listed impairment under 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(d).  If this requirement is met, the claimant is disabled. *Reddick*, 157 F.3d 715 at 721.

If a claimant does not have a condition which meets or equals a listed impairment, the fourth step in the sequential evaluation process is to determine the claimant's residual functional capacity ("RFC") or what work, if any, the claimant is capable of performing on a sustained basis, despite the claimant's impairment or impairments. 20 C.F.R. § 404.1520(e). If the claimant can perform such work, she is not disabled. 20 C.F.R.  § 404.1520(f). RFC is the application of a legal standard to the medical facts concerning the claimant's physical capacity. 20 C.F.R. § 404.1545(a).

United States District Court
Northern District of California

If the claimant meets the burden of establishing an inability to perform prior work, the Commissioner must show, at step five, that the claimant can perform other substantial gainful work that exists in the national economy. *Reddick*, 157 F.3d 715 at 721. The claimant bears the burden of proof in steps one through four. *Bustamante v. Massanari*, 262 F.3d 949, 953-954 (9th Cir. 2001). The burden shifts to the Commissioner in step five. *Id.* at 954.

### III.    THE ALJ'S DECISION

As an initial matter, the ALJ found that Plaintiff meets the insured status requirements of the Social Security Act through December 31, 2015. AR 25.  The ALJ found at step one that Plaintiff had not engaged in substantial gainful activity since the date of his application. AR 25.

At step two, the ALJ found that Plaintiff's severe impairments were asthma and status post pericardial effusion, with no current cardiac diagnosis. AR 25.  The ALJ determined that Plaintiff's mental impairments were not severe because they did not meet the durational requirement under 20 C.F.R. § 404.1509. AR 26.

At step three, the ALJ concluded that the Plaintiff did not have an impairment or combination of impairments that met or equaled a listed impairment in 20 C.F.R. § 404, Subpart P, Appendix 1. AR 27.  The ALJ based this finding on Plaintiff not having required six interventions for asthma treatment in any 12-month period, and that Plaintiff's congestive heart failure was a single episode, for which he received treatment in March 2007 and has since fully recovered. AR 27.

At step four, the ALJ concluded that Plaintiff has the RFC to perform "less than a full range of medium work," with some physical limitations, as well as some environmental limitations, including avoiding concentrated exposure to extreme cold and heat, dust, odors, fumes, and pulmonary irritants. AR 27.

At step five, the ALJ found that Plaintiff is unable to perform any past relevant work, because his limitation to less than the full range of medium work precludes the auto assembly line worker position, and his environmental limitations preclude the other positions. AR 31.

Plaintiff was born in 1960, and was 49 years old on the date the application was filed, which is defined as a younger individual age 18-49. AR 31.  He subsequently changed age

United States District Court
Northern District of California

category to closely approaching advanced age. *Id.*  Plaintiff has at least a high school education and is able to communicate in English. *Id.*  Transferability of job skills was not material because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills.  *Id.*  Considering Plaintiff's age, education, work experience, and residual functional capacity, there were jobs existing in significant numbers in the national economy that Plaintiff could perform.  AR 28-30.  Therefore, Plaintiff was not disabled within the meaning of the Social Security Act.  AR 30.

## IV.   DISCUSSION

Plaintiff makes three arguments in his motion for summary judgment: (1) that the ALJ erred by failing to find that Plaintiff had a severe mental impairment at step two by improperly rejecting medical evidence; and, as a result, (2) that the ALJ erred when he determined that Plaintiff's residual functional capacity was not limited by his mental impairment. (*See* Pl.'s Mot. at 1-5.)

The Court will address each argument in the order of the five-step evaluation.  There is no dispute that Plaintiff is not currently engaged in a substantial gainful activity, and so the analysis proceeds to step two to determine whether he is disabled.

### A.   ALJ did not err by finding that Plaintiff did not have a severe mental impairment at step two and gave proper credit to medical sources' opinion.[1]

The opinions of treating medical sources may be rejected only for clear and convincing reasons if not contradicted by another doctor. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Where the record contains conflicting medical evidence, the ALJ must make a credibility determination and resolve the conflict. *Chaudhry v. Astrue*, 688 F.3d 661, 671 (9th Cir. 2012) (quoting *Benton v. Barnhart*, 331 F.3d 1030, 1040 (9th Cir. 2003)).  "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by

---

[1] Additionally, Plaintiff appears to believe that by not finding a severe mental impairment at step two means that the existence of any mental health impairments is not considered in the RFC determination. (Pl.'s Mot. at 7:19-23.) This is incorrect. While the ALJ would have terminated the inquiry at that point had there been no other severe impairments, this is a threshold inquiry and Plaintiff was found to have severe impairments of asthma and status post pericardial effusion with no current cardiac diagnosis. AR 25. As a result, the inquiry proceeded to step three.

United States District Court
Northern District of California

United States District Court
Northern District of California

1   providing specific and legitimate reasons that are supported by substantial evidence....” *Bayliss v.*

2   *Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).  “The ALJ need not accept the opinion of any

3   physician, including a treating physician, if that opinion is brief, conclusory, and inadequately

4   supported by clinical findings.” *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th

5   Cir. 2009) (citations omitted).

6         Psychologists and psychiatrists, in diagnosing mental illness, often make five different sub-

7   diagnoses, on what they call “Axes.” *Williamson v. Astrue*, No. EDCV 12–00364–CW, 2013 WL

8   141544, at *4 n. 4 (C.D. Cal. Jan. 10, 2013). Axis V measures the Global Assessment of

9   Functioning ("GAF"). *Id.* The GAF is a scale ranging from zero to 100, used to rate social,

10  occupational and psychological functioning on a hypothetical continuum of mental health. *Id.* The

11  GAF score is a subjective determination that represents the clinician's judgment of the individual's

12  overall level of functioning. *Sigmon v. Kernan*, No. CV 06–5807 AHM (JWJ), 2009 WL 1514700,

13  at *9 n.3 (C.D. Cal. May 27, 2009).  A GAF score may help an ALJ assess mental residual

14  functional capacity, but is not raw medical data. People with a GAF score of 41 to 50 have

15  "serious symptoms" or any serious impairment in social, occupational or school functioning.

16  *Williamson v. Astrue*, No. EDCV 12–00364–CW, 2013 WL 141544, at *4 n.5 (C.D. Cal. Jan. 10,

17  2013). By contrast, a GAF score of 51 to 60 indicates only "moderate difficulty in functioning."

18  *Atkinson v. Astrue*, No. 2:10–cv–02072–KJN, 2011 WL 4085414, at *10 (E.D. Cal. Sept. 13,

19  2011). People in that category may have flat affects, circumstantial speech, occasional panic

20  attacks, few friends, or conflicts with coworkers. *Id.* A GAF score of 61 to 70 indicates some mild

21  symptoms or some difficulty in social, occupational or school functioning but generally

22  functioning well with some meaningful interpersonal relationships. *Sigmon v. Kernan*, No. CV

23  06–5807 AHM (JWJ), 2009 WL 1514700, at *9 n.3 (C.D. Cal. May 27, 2009).

24        At step two, the ALJ found that Plaintiff's severe impairments were asthma and post

25  pericardial effusion with no current cardiac diagnosis. AR 25.  Plaintiff does not dispute the

26  existence of these impairments.  Rather, Plaintiff contends that he should have also been found to

27  have severe mental impairments at step two. (Pl.'s Mot. at 7.)  In the decision, the ALJ concluded

28  that Plaintiff's mental impairments were not severe, because they did not meet the 12-month

1    durational requirement of the regulations. AR 26-27; *see* 20 C.F.R. §§ 404.1505(a), 404.1509. The

2    ALJ acknowledged that Plaintiff's mental impairments appeared to be severe for a brief period of

3    time in 2010, but noted that, by February 2011, Plaintiff's treating psychologist had stated that

4    Plaintiff had only mild limitations. AR 26, 628; *see* 20 C.F.R. § 404.1527(c)(2) (the agency gives

5    more weight to treating sources who can provide a longitudinal picture of a claimant's medical

6    impairments).  Thus, the ALJ determined that "[t]he anxiety and depressive disorder were the

7    result of an acute cardiac event, long since resolved. . . " and found that Plaintiff only experienced

8    mild mental limitations in his "ability to perform basic mental work activities and are therefore

9    nonsevere." AR 26.

10                   **i.    Diagnosis and Severity**

11         Plaintiff argues that the ALJ rejected the medical opinions of Cheryl N. Arpaci, Psy.D., T.

12   Brady, M.D., and Heather Barrons, Psy.D., which constituted medical evidence that Plaintiff

13   experienced moderate mental limitations, without providing a reason for doing so. (Pl.'s Mot. at 6-

14   9.)  To the contrary, the ALJ specifically discussed Dr. Arpaci's consultative examination—she is

15   the only one of the three doctors that examined Plaintiff—but concluded that, based on the

16   administrative record, discussed in more detail below, that Plaintiff's mental impairments, while

17   perhaps sufficiently severe, did not satisfy the 12 month durational requirement to constitute a

18   severe impairment. AR 26.

19         As an initial matter, the Court notes that these three opinions are from the six month period

20   of May to November 2010.  In May 2010, Dr. Arpaci concluded that Plaintiff depression and

21   anxiety were related to his heart problems in March 2007. AR 496, 499.  Specifically, Plaintiff

22   was moderately-to-severely impaired in his ability to withstand the stress of a routine workday due

23   to "panic attacks related to [his] heart condition." AR 500.  She further noted that his problems

24   were related to his "occupation," and assigned him a GAF score of 60, which indicates moderate

25   limitations. AR 499.

26         Thereafter, Dr. Brady and Dr. Barrons did their reviews of the medical record and both

27   declined to diagnose Plaintiff with depression.  Dr. Brady diagnosed Plaintiff with an anxiety

28   disorder that resulted in only mild limitations in daily living and social functioning, and moderate

United States District Court
Northern District of California

limitation in maintaining concentration, persistence, or pace. AR 509, 513.  Dr. Barrons diagnosed

Plaintiff with a mood disorder due to general medical condition (his heart condition), and panic

disorder without agoraphobia. AR 571, 573.  Despite these diagnoses, Dr. Barrons concluded that

Plaintiff was capable of sustaining "a simple routine over a 40 hour workweek." AR 580, 584. As

a result, the medical sources cited by Plaintiff are in agreement that his mental impairments

resulted from his heart condition, but that he was not precluded from all work.

      Plaintiff contends that the ALJ committed plain error when he failed to provide any

analysis on the weight he afforded Drs. Brady and Barrons. (Pl.'s Mot. at 10.)  To the contrary, the

ALJ did not reject their medical opinions, because he acknowledged that Plaintiff's mental

impairments appeared to be acutely severe for a brief period of time. AR 26.  Instead, the ALJ

found that Plaintiff's severe mental impairments did not persist for the 12 months necessary to

satisfy the durational requirement based on later treatment notes from Pathways to Wellness,

which confirmed that his symptoms have improved with medication and that he now only

experienced mild limitations. *Id.*  Thus, while the ALJ could have discussed the consultative

evaluations in more detail, any failure to do so would, at most, be harmless error, because he was

not rejecting their opinions.

    **ii.**    **Duration**

      Next Plaintiff appears to argue that since he was diagnosed and taking psychiatric

medications for one year that he meets the durational requirements for a severe impairment. (Pl.'s

Mot. at 9-10.)  The Social Security Act's durational requirement necessitates that an impairment

"must have lasted or must be expected to last for a continuous period of at least 12 months." 20

C.F.R. § 404.1509.  Having a diagnosis and taking medication for over one year does not

automatically render an impairment severe for the purposes of step two.  The ALJ acknowledged

that Plaintiff appeared to have suffered from a severe impairment in May 2010, but that the

anxiety disorder and major depressive disorder did not meet the durational requirements, because

they appear to have been resolved by February 2011. AR 26.  In fact, while the February 2011

GAF score assigned by a treating psychologist at Pathways to Wellness was a 60, which indicates

moderate limitations, the treating source noted that Plaintiff was experiencing only mild functional

1    limitations. AR 628.  Plaintiff argues that he was also assigned a GAF score of 60 at his June 16,

2    2011 visit to Pathway to Wellness. (Pl.'s Mot. at 9.)  That GAF score, however, is not supported

3    by the mental status report for that visit, which indicated that Plaintiff's mood was euthymic, his

4    behavior calm, his speech normal, and his affect appropriate. AR 618-19.  As a result, the ALJ is

5    tasked with weighing the medical evidence, and, taken as a whole, the evidence supports the

6    ALJ's conclusion that Plaintiff's mental status had sufficiently improved with medication and

7    does not satisfy the durational requirement to be considered a severe impairment at step two.

8        Accordingly, the medical evidence supports the ALJ's conclusion that Plaintiff's

9    depression was the result of his heart condition, which has since resolved, such that, with

10   medication, the mental residual limitations are mild, and do not constitute a severe impairment at

11   step two. *See* AR 26,496, 561, 571.

12       **iii.   Nonetheless, any failure to characterize Plaintiff's mental impairments as "severe" is harmless.**

13       The Court notes that Plaintiff fails to identify how any error was harmful given that the

14   ALJ took Plaintiff's mental limitations into account in his RFC assessment.  As a result, even if

15   the ALJ erred in neglecting to list Plaintiff's mental impairments as severe in step two, any error

16   was harmless. *See Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007)(harmless error when

17   decision reflects that the ALJ considered the plaintiff's limitations at step four).

18       Accordingly, the Court finds that the ALJ's finding that Plaintiff's mental impairments

19   were not severe at the time the decision was rendered was supported by substantial evidence.

20

21       **B.    The Residual Functional Capacity relied upon by the ALJ is supported by substantial evidence in the record.**

22       Plaintiff contends that the Residual Functional Capacity ("RFC") relied upon by the ALJ is

23   not supported by substantial evidence in the record, because it does not include his severe mental

24   impairments. (Pl.'s Mot. at 10.)  A Social Security claimant's RFC is what the claimant is capable

25   of doing despite his or her mental and physical limitations. 20 C.F.R. §§ 404.1545(a)(1),

26   416.945(a)(1); *Valentine v. Comm'r Soc. Sec. Admin*., 574 F.3d 685, 689 (9th Cir. 2009); *Mayes v.

27   Massanari*, 276 F.3d 453, 460 (9th Cir. 2001). An RFC is "an assessment of an individual's ability

28   to do sustained work-related physical and mental activities in a work setting on a regular and

United States District Court
Northern District of California

12

1   continuing basis." SSR 96-8p. The ALJ must consider all relevant evidence in formulating an

2   RFC, and "an RFC that fails to take into account a claimant's limitations is defective." *Valentine*,

3   574 F.3d at 690. The ALJ's findings may be set aside if not supported by substantial evidence.

4   *McCartey v. Massanari*, 298 F.3d 1072, 1075 (9th Cir. 2002); *Smolen*, 80 F.3d at 1279. An ALJ

5   may omit limitations arising out of a claimant's subjective complaints only if the subjective

6   complaints have been properly discredited. *See Lingenfelter*, 504 F.3d at 1040-41 (RFC excluding

7   subjective limitations was not supported by substantial evidence where the ALJ did not provide

8   clear and convincing reasons for discrediting claimant's testimony).

9        Here, the ALJ found that Plaintiff has the RFC to "perform less than the full range of

10  medium work" with some limited physical and environmental restrictions. AR 27.  The RFC did

11  not explicitly discuss Plaintiff's mental impairments, because the ALJ found that the anxiety and

12  depressive disorder were the result of an acute cardiac event, which has long since resolved. AR

13  26.  Additionally, while the ALJ found that since Plaintiff's "medically determinable mental

14  impairments cause[d] no more than 'mild' limitation" and Plaintiff had no episodes of

15  decompensation rendering them non-severe, the RFC "assessment reflect[ed] the degree of

16  limitation [the ALJ] found in the 'paragraph B' mental function analysis." AR 26-27.  As

17  discussed above, the ALJ's finding is supported by substantial evidence. *See* discussion *supra*

18  Parts IV.A.

19       Moreover, Plaintiff fails to identify any functional limitations he experiences as a result of

20  his mental impairments. See *Burch v. Barnhart*, 400 F.3d 676, 683 (9th Cir. 2005) (upholding the

21  ALJ's decision where there was no evidence of functional limitations that would have affected the

22  ALJ's analysis).  Even if he did, any error would still be harmless, because all of the doctors who

23  assessed Plaintiff's mental limitations concluded that, despite some mild and moderate limitations,

24  Plaintiff could still perform simple, repetitive tasks. AR 494, 500, 584. This is consistent with the

25  ALJ's finding that Plaintiff could perform unskilled work of medium level exertion. AR 31-32;

26  *see also* 20 C.F.R. § 404.1568(a) ("Unskilled work is work which needs little or no judgment to do

27  simple duties that can be learned on the job in a short period of time.").  Specifically, the ALJ

28  cited to "unskilled light work in an office or retail setting" as being within Plaintiff's RFC. AR 32.

13

1   Since Plaintiff has provided no evidence—nor has he argued—that his mental impairments

2   prevent him from performing unskilled work of medium level of exertion, any error would be

3   harmless.

4        Accordingly, while the ALJ considered Plaintiff's medically determinable mental

5   impairments in the RFC assessment, any failure to do so would have been harmless error.

6                                    **V.     CONCLUSION**

7        For the reasons set forth above, Plaintiff's motion for summary judgment is DENIED,

8   Defendant's cross-motion for summary judgment is GRANTED. The Clerk shall close the case.

9        IT IS SO ORDERED.

10  Dated: March 31, 2015

11  _____

12  KANDIS A. WESTMORE
    United States Magistrate Judge

14